UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

UMB Bank, N.A.,
Appellant

    v.

The MacMillin Company, LLC,
et al., Appellees

Civil No. 23-cv-036-LM
Opinion No. 2023 DNH 130 P

**O R D E R**

UMB Bank, N.A., appeals the bankruptcy court's order (doc. no. 588 in the bankruptcy proceeding, Case No. 21-10523) that (1) granted appellee The MacMillin Company's motion seeking a determination that its mechanics' lien has priority over UMB Bank's mortgage and (2) granted the motion filed by appellees Denron Plumbing & HVAC, LLC; Wallace Building Products Corporation; and JNR Gutters, Inc. (collectively the "subcontractors") requesting the same. For the following reasons, the bankruptcy court's order is affirmed in part, and vacated in a limited respect and remanded in part.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 158(a), this court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. District courts reviewing an appeal from a bankruptcy court decision generally examine the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. Stilkey v. Marsters, No. 17-cv-337-LM, 2018 WL 345946, at *2 (D.N.H. Jan. 9,

2018). Discretionary rulings made under the bankruptcy code are reviewed for abuse of discretion. Id. This court may affirm, modify, reverse, or remand the bankruptcy court's judgment with instructions for further proceedings. See GT Advanced Techs. Inc. v. Harrington, No. 15-cv-69-LM, 2015 WL 4459502, at *1 (D.N.H. July 21, 2015).

## BACKGROUND

The parties stipulated to the factual record before the bankruptcy court, and the relevant background facts are not disputed.

Debtor Prospect-Woodward was a not-for-profit corporation which owned and operated a retirement facility in Keene, New Hampshire. On April 14, 2017, Prospect-Woodward hired MacMillin to manage the facility's construction. Appellees Denron Plumbing, Wallace Building Products, and J.N.R. Gutters were some of MacMillin's subcontractors.

About a month later, on May 15, MacMillin began preliminary work on the facility. This work included tree clearing pursuant to a wetlands permit that required such work to be performed before June 1, 2017. The subcontractors involved in this appeal did not begin work until later.

Under a loan agreement dated June 1, 2017, a state agency loaned proceeds of a bond sale to Prospect-Woodward to finance the facility's construction. On June

19 appellant UMB Bank's predecessor in interest[1] recorded the mortgage against the facility.

MacMillin worked under the construction contract through 2019.  During this time, UMB Bank paid MacMillin at least $55 million for labor and materials from the money loaned to Prospect-Woodward.  MacMillin executed partial lien waivers over the course of the project.  The partial lien waivers expressly reserved MacMillin's mechanics' lien for unpaid retainage, interest, pending unresolved change order requests, unresolved claims, and amounts not yet billed by MacMillin's subcontractors and suppliers.

By 2019, the facility was almost complete.  Prospect-Woodward, however, stopped paying MacMillin because of alleged construction defects.  Between July and October 2019, MacMillin and its subcontractors sued Prospect-Woodward for breach of contract and to perfect their then-inchoate mechanics' liens.

On October 25, 2019, a state court found that MacMillin and its subcontractors were likely to prevail on their claims and were entitled to attachments.  MacMillin recorded the writ of attachment and the state court's order based on the mechanics' liens on October 31.  The total amount of these liens is approximately $5.7 million.

---

[1] UMB Bank is the assigned trustee of the mortgage.  For ease of reference and because it makes no difference as to the legal issues involved in this appeal, the court generally refers to UMB Bank when discussing actions taken by its predecessors in interest, though it may have been, in fact, UMB Bank's predecessors in interest or such predecessors' agents taking the action.

Prospect-Woodward filed a chapter 11 bankruptcy petition in August 2021. In the bankruptcy, UMB Bank's mortgage is an allowed claim[2] against Prospect-Woodward that is secured by the facility to the extent of the mortgage amount, which is about $65 million. MacMillin and the subcontractors also have allowed claims via their mechanics' liens on the facility totaling approximately $5.7 million. In late 2021, the bankruptcy court approved a sale of the facility for $33 million. As these figures demonstrate, the facility's sale will fail to cover all of UMB Bank's, MacMillin's, and the subcontractors' claims.

Understanding that reality, MacMillin and the subcontractors filed a motion in the bankruptcy court arguing that, by virtue of their mechanics' liens and a victory under New Hampshire's "race-notice" rules, they have priority over – or are "senior" to – UMB Bank's mortgage. UMB Bank objected, contending that its mortgage has priority under a New Hampshire statute, RSA 447-12:a ("Section 12-a"), or, alternatively, that it has priority under the race-notice rules, not MacMillin.

The bankruptcy court agreed with MacMillin, finding that MacMillin's mechanics' lien had priority under the race-notice rules because UMB Bank had actual or inquiry notice of MacMillin's mechanics' lien before it recorded the mortgage. The bankruptcy court rejected UMB Bank's argument that it was entitled to priority under Section 12-a. The bankruptcy court also found that under

---

[2] An "allowed claim" is a claim against the debtor that no party in interest has objected to or that the bankruptcy court has found to be permitted. See 11 U.S.C. § 502(a); Bank of Am., N.A. v. Caulkett, 575 U.S. 790, 793 (2015). The parties have reserved litigation about the precise amounts of their claims, so the numbers used in this order are approximations consistent with the parties' positions.

4

RSA 447:5 and 447:8, the subcontractors' liens followed MacMillin's priority.  UMB Bank filed this appeal and argues that the bankruptcy court erred as to all three points.

## DISCUSSION

Generally, in bankruptcy "state law governs the substance of claims." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450 (2007).  The parties do not dispute that New Hampshire law governs the relative priority of their claims.

New Hampshire is a "race-notice" jurisdiction, meaning that "a purchaser or creditor has the senior claim if he or she records without notice of a prior unrecorded interest." Amoskeag Bank v. Chagnon, 133 N.H. 11, 14 (1990); In re McLaughlin, Nos. BK 09-11671-JMD, BK 09-11672-JMD, & BK 09-11673-JMD, 2011 WL 1706791, at *3 (Bankr. D.N.H. May 4, 2011).  In other words, when there are two interests competing for priority, the first creditor to have recorded its interest has priority over the second-in-time creditor's interest, unless the first creditor already knew or should have known about the second interest.  In re Moultonborough Hotel Grp., LLC, 726 F.3d 1, 5 (1st Cir. 2013) ("The New Hampshire recording statute, [RSA] 477:3–a, acknowledges by negative implication the rule that the first party to record without notice of a prior party's claim has priority.").  The creditor who has priority under the race-notice rules is often called the race-notice "winner" or "victor" in relation to the other creditor, who may be called the race-notice "loser."

A court can find that a creditor had prior notice of another's interest in several ways. Of course, a creditor had notice if it in fact knew about the prior interest at the time it recorded its own interest. Amoskeag Bank, 133 N.H. at 14. Likewise, a creditor has constructive notice of any interest already recorded. Id. And, finally, an unrecorded interest may have priority over a recorded interest if the recording party possessed facts which would cause a reasonably prudent person to have inquired further into the existence of the unrecorded interest. See C.F. Invs. v. Option One Mortg. Corp., 163 N.H. 313, 316 (2012); In re McLaughlin, Nos. BK 09-11671-JMD, BK 09-11672-JMD, BK 09-11673-JMD, 2011 WL 1706791, at *3 (Bankr. D.N.H. May 4, 2011) ("A party is deemed to have actual notice if an investigation would show the existence of an interest in property.").

Beyond the race-notice rules, New Hampshire law provides certain interests automatic priority in specified circumstances. Specifically, MacMillin and the subcontractors hold mechanics' liens arising under RSA 447:2(I).³ Under New Hampshire law, mechanics' liens begin as inchoate – meaning incomplete or unperfected – liens at the time work under a contract first begins. See In re McLaughlin, 2011 WL 1706791, at *3 ("The mechanic's lien arises by operation of law when the labor or materials are furnished."); Boulia-Gorrell Lumber Co. v. E.

---

³ RSA 447:2(I) states: "If any person shall perform labor, provide professional design services, or furnish materials to the amount of $15 or more for erecting or repairing a house or other building or appurtenances, . . . , or for consumption or use in the prosecution of such work, . . . , by virtue of a contract with the owner thereof, he or she shall have a lien on any material so furnished and on said structure, and on any right of the owner to the lot of land on which it stands."

Coast Realty, 148 A. 28, 30 (N.H. 1929) (stating that a mechanics' lien is "one indivisible lien for the whole" if it was performed "under one entire contract," so that "as the work was done under an entire contract, the lien had priority over the mortgages for the labor and materials furnished after as well as before the mortgages were recorded"); Pike v. Scott, 60 N.H. 469, 471 (1881) ("If the materials were furnished under one entire contract, one indivisible lien for the whole was created thereby."). After the contractor finishes its work under the contract, it must take steps to perfect (or complete) the lien. See RSA 447:9; RSA 447:10. Otherwise, the lien expires. See RSA 447:9; In re McLaughlin, 2011 WL 1706791, at *3. There is no dispute in this appeal that MacMillin held a mechanics' lien for the total amount due under its contract with Prospect-Woodward at the time UMB Bank recorded the mortgage. There is also no dispute that MacMillin timely perfected its mechanics' lien after completing work under the contract.

UMB Bank's interest, on the other hand, is a construction mortgage, which is "any mortgage loan made for the purpose of financing the construction, repair or alteration of any structure on the mortgaged premises where the lien secured by such attachment arises from the same construction, repair or alteration work." RSA 447:12-a.

By statute, New Hampshire provides mechanics' liens "precedent and priority over any construction mortgage." Id. The priority given to mechanics' liens, however, is qualified as follows:

>Such attachment shall not be entitled to precedence as provided in this section to the extent that the mortgagee shows that the proceeds of the mortgage loan were disbursed either toward payment of invoices from or claims due subcontractors and suppliers of materials or labor for the work on the mortgaged premises . . . .

Id.[4]  The parties agree that UMB Bank paid MacMillin for some of the work MacMillin performed under the contract, so the applicability of Section 12-a is qualified to the extent of those payments, which is about $55 million.

UMB Bank argues that the bankruptcy court erred: (1) by rejecting its argument that Section 12-a mandates that its construction mortgage has priority over MacMillin's lien, regardless of whether MacMillin's lien would have priority under New Hampshire's race-notice rules; (2) in the alternative, by finding that MacMillin has priority under New Hampshire's race-notice rules on the ground that UMB Bank had notice of the mechanics' liens prior to UMB Bank's recording of the mortgage; and (3) by finding that the subcontractors share in MacMillin's race-notice victory under RSA 447:5 and 447:8.[5]

The court addresses each argument below.

---

[4] RSA 447:12-a also contains a second qualification that is not relevant to this appeal.

[5] RSA 447:5 and 447:8 are discussed in greater detail in Section III.

8

I. <u>Whether the bankruptcy court erred in finding that Section 12-a (when a qualification applies) does not override the race-notice rules.</u>

First, UMB Bank contends that Section 12-a overrides New Hampshire's race-notice rules and provides construction mortgages priority over mechanics' liens to the extent the lienholder was paid for its work. In support, UMB Bank primarily points to <u>Moultonborough</u>, a First Circuit decision with similar facts to this case. UMB Bank contends that the bankruptcy court erred by failing to follow this binding precedent. Because this presents a pure question of law, the court reviews the bankruptcy court's decision on this issue de novo. <u>See</u> <u>In re Hill, 562 F.3d 29, 32 (1st Cir. 2009)</u>.

In <u>Moultonborough</u>, the debtor hired a contractor, ROK, to build a hotel. <u>726 F.3d at 2</u>. ROK performed some work under that contract but terminated it when the debtor failed to pay. <u>Id.</u> at 2-3. The debtor found a lender a short time later, and ROK agreed to resume work on the hotel, but under a new, second contract. <u>Id. at 3</u>. The lender paid ROK what was owed under the first contract. <u>Id.</u> By doing so, the lender extinguished ROK's mechanics' lien for the work performed under the first contract. <u>Id.</u>

After the lender recorded its mortgage on the property, ROK resumed construction, now under the second contract. <u>Id.</u> During construction, the lender paid ROK about $6.5 million for its ongoing construction work under the second contract. <u>Id.</u> As the lender paid it, ROK executed complete lien waivers that covered all work that had occurred prior to the payment date. <u>See id.</u> When ROK finished work under the second contract, however, the lender refused to pay the

9

balance owed to ROK under the second contract, alleging that the debtor had breached the loan agreement by failing to secure yet more funding to ensure the project's completion.  Id.  ROK claimed approximately $2.5 million in unpaid amounts under the second construction contract.  Id.

The debtor ultimately defaulted on the mortgage and went into bankruptcy. Id. at 4.  In the bankruptcy case, the lender brought an adversary proceeding against ROK, asserting – like UMB Bank here – that its construction mortgage was senior to ROK's mechanics' lien under Section 12-a, to the extent of its $6.5 million total payments to ROK.  Id.  In other words, the lender asserted that it should be paid the first $6.5 million of the hotel's foreclosure sale proceeds and that if and only if that amount were satisfied, ROK could collect the $2.5 million it claimed to be owed.  See id. at 5.

In response, ROK argued that "its lien for later work on the project for which it was not paid takes precedence over the mortgage."  Id.  In support, ROK argued that "because it began work on the project before the mortgage was recorded, any lien arising out of work on the project performed at any time, whether prior to or after recording of the mortgage, remains senior to the mortgage, even to the extent the mortgagee paid for work."  Id.  ROK also argued that aside from Section 12-a, New Hampshire common law provided another alternative avenue for priority and that if such rules were applied, ROK would have priority under the circumstances. See id.

10

Examining "the New Hampshire statutory scheme that recognizes mechanics' liens" and "provides the procedure for their perfection," the First Circuit rejected ROK's arguments and agreed with the lender. First, the Circuit looked at the race-notice issue, finding that "the race-notice rules favor[ed]" the lender "because the mortgage was recorded well before the work for which a lien is claimed was performed." Id. Second, the Circuit analyzed whether ROK had priority under Section 12-a, notwithstanding the race-notice rules. Id. at 6. But, as here, Section 12-a did not apply because it has "an important qualification" – namely, a mechanics' lien does not have priority under Section 12-a to the extent the contractor was paid for its work. Id.

Finally, the court looked to ROK's claim that – setting aside the race-notice rules and Section 12-a – it had priority under alternative common law rules. The court also rejected this argument, concluding that neither case identified by ROK "establishe[d] any principle at variance with the present statutory scheme." Id. In other words, ROK had not identified any New Hampshire common law rule which entitled it to priority notwithstanding its race-notice loss and the non-applicability of Section 12-a. See id.[6] Having rejected all three of ROK's arguments for priority

---

[6] Though somewhat unclear from the Circuit's decision, it appears the two cases identified by ROK in Moultonborough (Cheshire Provident Institute v. Stone, 52 N.H. 365 (1872), and Graton & Knight Manufacturing Company v. Woodworth-Mason Company, 69 N.H. 177 (1897)), applied, in effect, what was or developed into race-notice rules. See Graton & Knight Mfg. Co., 69 N.H. at 177 ("The building being in the course of erection when the claimant took the mortgages, [the mortgagee] would have constructive, if not actual, notice of the contract under which the [material] was furnished; and his security would be subject to the [mechanics' lien],

in its favor, the court held that the lender's construction mortgage was senior to the amount owed to ROK under the second contract to the extent that ROK had already been paid by the lender.  Id.

UMB Bank argues that, under Moultonborough, a mechanics' lien can only have priority over a construction mortgage if Section 12-a applies.  Said differently, UMB Bank contends that Section 12-a provides automatic priority for construction mortgages when one of its qualifications applies.  But the plain language of Section 12-a shows otherwise, and Moultonborough, which is distinguishable from the facts of this case, does not establish any rule contrary to that plain language.

To start, when it applies, Section 12-a creates an exception to the race-notice rules in favor of mechanics' liens over construction mortgages.  Section 12-a, however, is silent regarding which interest has priority when it does not apply due to a qualification.  And going further, Section 12-a expressly limits the effect of its qualifications to a mechanics' lien's priority "as provided in this section."  Therefore, a mechanics' lien may be entitled to priority under some other rule, including race-notice, when Section 12-a does not apply.

Notwithstanding Section 12-a's plain language, UMB Bank points to Moultonborough to support its position that Section 12-a is the exclusive source of priority for mechanics' liens.  But, read closely, Moultonborough refutes rather than

---

if one existed."); Cheshire Provident Inst., 52 N.H. at 367 (holding that mechanics' lien "took precedence of the mortgages for all that [the contractor] did 'by virtue of the contract'" where "[u]pon reasonable inquiry, [the mortgagees] would undoubtedly have learned of the existence of the contract between the mortgagor and the [contractor].").

12

supports UMB Bank's position. Tellingly, the Circuit began its analysis by setting out New Hampshire's race-notice rules and confirming that ROK was the race-notice loser. 726 F.3d at 5.[7] Only after resolving that threshold issue did the Circuit analyze whether ROK's mechanics' lien might find priority under Section 12-a. See id. If the Circuit intended to hold that Section 12-a provided the exclusive source of priority for a mechanics' lien, there would have been no reason to consider whether ROK's mechanic lien might have priority pursuant to New Hampshire's race-notice rules.

To be sure, taken without context, some of the Circuit's language in Moultonborough appears to support UMB Bank's argument. But the Circuit's holding must be understood in the context of the opinion as a whole. Most notably, when addressing whether ROK could still find priority over the lender's construction mortgage despite its race-notice loss and its inability to use Section 12-a, the Circuit observed that ROK had presented an argument that "the scheme envisioned by [Section 12-a] is nonexclusive, and that an alternative source of priority for mechanics' liens can be found in older New Hampshire case law." 726 F.3d at 6. UMB Bank contends that because the Circuit rejected ROK's argument – described in the opinion as a contention that Section 12-a is "nonexclusive" – the

---

[7] Importantly, the lien at issue in Moultonborough related to the work ROK performed under its second contract with Moultonborough, as opposed to the lien which arose from the work ROK performed under the first contract. The First Circuit thus chose its words carefully when it explained that the mortgage was recorded "before the work for which a lien is claimed was performed." See id. By contrast, in this case, the work for the lien that MacMillin claims began before the mortgage was recorded.

13

Circuit must have intended to hold that Section 12-a is indeed exclusive.  Far from making such a sweeping holding, the Circuit merely reasoned that the two 19th-century cases cited by ROK in support of this claimed alternate source of priority were unpersuasive on that count because neither "establishe[d] any principle at variance with the present statutory scheme" – the "present statutory scheme" referring to <u>both</u> New Hampshire's race-notice rules and Section 12-a.  See 726 F.3d at 5-6.[8]  UMB Bank thus incorrectly equates the First Circuit's rejection of ROK's argument that it was entitled to priority under two 19th-century cases with a rejection of the applicability of the race-notice rules.  See <u>id.</u> at 5.[9]  As just discussed, it would have been odd for the Circuit to have examined and applied the race-notice rules, just to reverse course a few paragraphs later and implicitly hold that they were irrelevant.

---

[8] UMB Bank also points to similar reasoning in Judge Barbadoro's decision in the same case.  Finding, as the First Circuit ultimately did, in favor of the lender, Judge Barbadoro wrote: "I conclude that [Section 12-a] unambiguously sets forth the exact terms of priority between a mechanic's lien attachment and a construction mortgage, notwithstanding any prior inconsistent common law."  ROK Builders, LLC v. 2010-1 SFG Venture, LLC, No. 12-cv-57-PB, 2012 WL 3779669, at *3-4 (D.N.H. Aug. 30, 2012).  UMB Bank contends that, by this, Judge Barbadoro meant the race-notice rules were inapplicable.  But in that paragraph Judge Barbadoro was not rejecting the race-notice rules, as UMB Bank seems to suggest, but was rather rejecting ROK's convoluted argument that the common law establishes some alternative scheme for automatic priority for mechanics' liens which Section 12-a did not abrogate.  In any event, the district court opinion underlying <u>Moultonborough</u> is not binding precedent, while <u>Moultonborough</u> is.  To the extent the two decisions are inconsistent, <u>Moultonborough</u> necessarily controls.

[9] Moreover, the First Circuit again observed that ROK's first-in-time lien under the first contract had "expired, leaving ROK with only a lien for later work," meaning work performed under the second contact, for which the Circuit found ROK was the race-notice loser.

Finally, UMB Bank cites language from a treatise, which states that "[a] statute dealing with construction loan mortgages <u>may</u> be enacted with the intent of giving the construction mortgage priority over mechanics' liens . . . ." Doc. no. 27 at 28 (emphasis added) (quoting 56 C.J.S. Mechanics' Liens § 263 (2023)). But that treatise continues, observing that a state "may" decide to treat mechanics' liens and construction mortgages in many different ways. See 56 C.J.S. Mechanics' Liens § 263 (2023) (listing several possible approaches that states may take to accomplish their policy objectives related to mechanics' liens and construction mortgages). For that same reason, UMB Banks's reference to how mechanics' liens are treated under Ohio law is unpersuasive. See id. § 4 ("By reason of the dissimilarity of the mechanic's lien statutes of the different states, the decisions of the courts of one state construing the statute of that state are generally not considered as of great value as precedents . . . ."); see also Grant S. Nelson, et al., Real Estate Finance Law § 12.4 at 1063 (6th ed. 2014) ("Generalizations about mechanic's liens are extremely problematic and always must be checked against local law, because the laws creating the liens and judicial interpretations of the laws are extremely varied . . . .").[10] At bottom, New Hampshire chose to determine priority by race-notice

---

[10] UMB Bank claims that Ohio law "mimic[s]" Section 12-a, but this is not the case. Compare O.R.C. § 1311.14 ("Except as provided in this section, the lien of a mortgage . . . shall be prior to all mechanic's . . . and similar liens . . . to the extent that the proceeds thereof are used and applied for the purposes of and pursuant to this section . . . ."), with RSA 477:12-a (stating that mechanics' liens have "precedent and priority over any construction mortgage" but that "[s]uch attachment shall not be entitled to precedence as provided in this section to the extent that the mortgagee shows that the proceeds of the mortgage loan were disbursed . . . ."). Ohio's statute

15

rules and to provide mechanics' liens a qualified automatic priority under Section 12-a. But there is nothing in the plain language of Section 12-a or the caselaw interpreting it that holds New Hampshire likewise intended a construction mortgagee to have automatic priority when Section 12-a's applicability is qualified.

For these reasons, the court affirms the bankruptcy court's finding that MacMillin's mechanics' lien has priority over UMB Bank's lien to the extent MacMillin was the race-notice winner.

II.   <u>Whether the bankruptcy court erred in finding that UMB Bank had inquiry notice about MacMillin's lien prior to recording its mortgage.</u>

In the alternative to its argument that it is entitled to automatic priority under Section 12-a, UMB Bank contends that it was the race-notice winner because it was the first to record its interest in the property and did so without notice of MacMillin's prior existing interest. UMB Bank argues that the bankruptcy court erred by finding otherwise.

The bankruptcy court did not clearly err. The bankruptcy court found[11] that MacMillin "offered undisputed evidence that work had in fact commenced on the

---

provides that covered mortgages have priority over a mechanics' lien when loan funds have been disbursed to the lienholder, while Section 12-a only eliminates the automatic priority given to mechanics' liens in the same circumstances. Further, Ohio's statute also expressly overrides other statutory rules, stating: "This section, as to mortgages contemplated by this section, controls over all other sections of the Revised Code relating to mechanic's . . . and all liens that can be had under this chapter . . . ." O.R.C. § 1311.14.

[11] The parties dispute whether MacMillin or UMB Bank bears the burden of proof as to notice. The bankruptcy court found that regardless of who had the burden,

property at the time the [original lender] recorded its mortgage," that a reasonable inquiry by UMB Bank would have revealed such work, and, by operation of law, the existence of MacMillin's mechanics' lien.  Doc. no. 29-27 at 15.  The court continued, explaining that, "[s]pecifically, the stipulated record shows that the wetland permit issued in connection with the project prohibited tree clearing work between June 1, 2017, and July 31, 2017, but the Contract required work to commence by June 30, 2017."  Id.  So, "unless tree clearing work commenced before the June 1, 2017, proscription period, the pricing under the Contract was in jeopardy."  Id.  Consequently, Prospect-Woodward "instructed MacMillin to commence work on May 15, 2017, and the [original lender] paid invoices at the [loan] closing that referred to both the wetland permit and the tree clearing that had already occurred at the project site."  Id.  The bankruptcy court found that UMB Bank "did not refute that such invoices were paid prior to the [original lender] recording its mortgage, or that they referred to pre-recordation work that would have been obvious to anyone inspecting the work site."  Id.

      The record shows, just as the bankruptcy court described, that prior to recording its interest, UMB Bank knew about the construction contract and the wetlands permit which together required certain work to be performed prior to June 1, 2017.  A reasonable creditor possessing this information would have undertaken a simple observation of the property, which would have revealed the already-

---

there was sufficient evidence to find that UMB Bank had notice of MacMillin's interest.  The court agrees that there was sufficient evidence to find that UMB Bank had notice regardless of who had the burden of proof.

17

commenced tree-clearing work resulting in MacMillin's mechanics' lien. For those reasons, the bankruptcy court did not clearly err by finding that UMB Bank knew or should have known about MacMillin's mechanics' lien prior to recording its mortgage.[12]

III. <u>Whether the bankruptcy court erred by finding that the subcontractors are entitled to priority via MacMillin's mechanics' lien.</u>

Lastly, the bankruptcy court found that the subcontractors shared in MacMillins' race-notice victory by virtue of RSA 447:5 and 447:8, even though the subcontractors were race-notice losers as against UMB Bank. RSA 447:8 states, in relevant part, as follows:

> Any person giving notice as provided in RSA 447:5-7 shall . . . furnish to the owner . . . an account in writing of the labor performed . . . and the owner or person in charge shall retain a sufficient sum of money to pay such claim, and shall not be liable to the agent, contractor or subcontractor therefor, unless the agent, contractor or subcontractor shall first pay it.

And RSA 447:5 states:

> If a person shall perform labor . . . or furnish

---

[12] In a footnote, doc. no. 27 at 48 n.12, UMB Bank summarily asserts that MacMillin was on notice of the "construction financing" before it began work. This argument does not appear to have been presented to the bankruptcy court, and it is insufficiently developed before this court, in any event. Accordingly, it is waived. See Coons v. Industrial Knife Co., 620 F.3d 38, 44 (1st Cir. 2010) (explaining that "judges are not obligated to do a party's work for him" and that district courts are "free to disregard" arguments that are not developed in briefs); Timmins Software Corp., v. EMC Corp., 502 F. Supp. 3d 595, 606 (D. Mass. 2020) (explaining that superficial arguments may be deemed waived) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)). Similarly, UMB Bank did not argue that MacMillin is necessarily a race-notice loser as against the mortgage because MacMillin's mechanics' lien was inchoate at the time the mortgage was recorded.

> materials to the amount of $15 or more for any of the purposes specified in [assorted statutory sections], by virtue of a contract with an agent, contractor or subcontractor of the owner, the person shall have the same lien as provided in said sections, provided, that he or she gives notice in writing to the owner or to the person having charge of the property that he or she shall claim such lien before performing the labor or furnishing the material for which it is claimed.

In other words, so long as the subcontractors provided notice under RSA 447:5, :6, or :7, "the owner or person in charge [i.e., Prospect-Woodward] shall retain a sufficient sum of money to pay" the subcontractors' claims. RSA 447:8. The bankruptcy court found that the subcontractors provided the requisite notice under RSA 447:5, so Prospect-Woodward was required to pay the subcontractors' claims prior to paying MacMillin's claim (whose claim is prior to UMB Bank's claims). In effect then, the subcontractors' claims have first priority.

UMB Bank argues that, contrary to the bankruptcy court's finding, the subcontractors did not provide the required notice and the record does not evidence such notices. The subcontractors respond and appear to agree with UMB Bank that they did not provide notice prior to their work commencing as required by RSA 447:5. See doc. no. 31 at 4. The subcontractors argue, however, that they in fact provided notice after work commenced and that RSA 447:6 permits such post-work notice.[13]

---

[13] RSA 447:6 states that "[s]uch notice may be given after the labor is performed, the professional design services are provided, or the material is furnished, and said lien shall be valid to the extent of the amount then due or that may thereafter become due to the contractor, agent or subcontractor of the owner."

19

Considering the agreement between UMB Bank and the subcontractors that they did not provide notice under RSA 447:5, the court finds that the bankruptcy court erred in finding that the subcontractors were entitled to priority under RSA 447:8 by virtue of RSA 447:5 alone. The court vacates the bankruptcy court's decision only in this limited respect and remands the matter so that the bankruptcy court can determine whether RSA 447:8 nonetheless still applies on the present record because the subcontractors provided sufficient notice considering RSA 447:6.[14]

## CONCLUSION

The bankruptcy court's order is affirmed in part and vacated and remanded in part.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 16, 2023

cc:   Counsel of Record

---

[14] The subcontractors argue that the court should affirm on an alternative basis that the bankruptcy court did not reach, namely, that the subcontractors are entitled to automatic priority under Section 12-a. The court declines to do so and leaves that matter for the bankruptcy court to address in the first instance, if it chooses to do so.